Curia, per Evans, J.
There is not, and cannot be, a doubt, but that all parties who had levied attachments, whether foreign or domestic, on the property of Elijah Byne, Enoch Byne and Harmon Hust, in Nov. 1844, were *606 before the court and represented by counsel, when the case of Moore & Davis & al. vs. Elijah and Enoch Byne and Harmon Hust, was considered and decided.
In that case, (1 Rich. R. 99,) it is expressly stated that the slaves alleged to be the property of Harmon Hust were seized under domestic attachments ; that they were in the •exclusive possession of W. H. Byne ; and that he claimed them as a purchaser. This seizure, as well as that of the other property attached as belonging to Enoch and Elijah Byne, was, in the case referred to, declared to be illegal, and the property ordered to be delivered up to W. H. Byne, out of whose possession it had been illegally taken. Boggs and Hall were, so far as I am informed, the only persons who had issued domestic attachments, and they were certainly before the court and bound by its decision. Their attachments were levied on the 21st Nov., and there is no pretence that the negroes were not, when levied on, in the exclusive possession of W. H. Byne. It has been said by the counsel, in the argument here, that Hust came over with the negroes from the State of Georgia, and was in the neighborhood when the sheriff levied. This may be so ; but it was not so understood, when the case was before the court; nor do I see that that fact could make any difference, if, as was represented, W. H. Byne was a purchaser ■in possession.
It has been contended that Miller’s case is not affected by the decision in the case of Moore & Davis and others vs. Byne & Hust, because the deputy sheriff, Lindsey, swore that no one was present when he levied it; or, as is said in the brief, the property was derelict. By the sheriff’s return, it seems it was levied upon on the 21st and 22nd. of Nov., and it is very possible that the levy was made after the property was forcibly taken out of W. H. Byne’s possession, and when he was not present; but it would be a disgrace to the law, if a legal levy could be made by a sheriff on property of which he had illegally possessed himself, to the prejudice of the rights of others.
Miller, with the other attaching creditors, was a party before the court in the case above stated, and if there had •bepn any thing in his case which required the application *607 of a rule differing from the other cases, it should then have been presented. That his attorney considered his case as decided, I think may be fairly inferred from his subsequent proceeding by domestic attachment. How the sheriff retained the possession of Bust’s property does not clearly appear ; but it appears from the case of Byne vs. Byne, 1 Rich. 440, that the sheriff did deliver up the property of the Bynes to Wigfall, the attorney of W. H. Byne, but that it was immediately seized under a new batch of attachments. From an order, made by consent at the subsequent court, discontinuing .all foreign attachments which had been issued against Hust, wherein he was a party with the Bynes, I infer the sheriff had seized Hust’s property as well as Byne’s, under these new attachments. In considering the case, I shall assume that the levy of the attachments of Miller, Hall and Boggs, has been already decided to be illegal and void, and then the true questions involved in the case will alone remain to be decided. In the case of Byne vs. Byne. 1 Rich 440, my brother Frost said “ an illegal service of process is not the commence-mént of an action, the pendency of which may be objected to a second suit.” Such illegal service creates no lien in cases of attachment. If there was no lien, then the confession of judgment by Hust to Miller is not the revival of a lien by waiving an irregularity, but the creation of a lien by relation back to the illegal service. If the levy had been set aside at the instance of Hust, and it had been a mere irregularity, then it may be that, as between him and Miller, he might, by confessing judgment, waive the irregularity and remove the objection to the levy. He, at least, would not, after the confession, be allowed to question the regularity of the previous proceedings. But the doctrine, contended for in this case, that such waiver, by relation tack, can defeat rights which had accrued in the mean time, has no support from any case or any legal analogy. In this view of the case, Miller’s confession of judgment can only (as to Gardner,) be regarded as a common confession, and has no lien except that created by the fi. fa. which was not lodged until October. In the mean time, Gardner had acquired a lien both by his attachment *608 and his fi. fa., and the question, whether Gardner’s confession of judgment extinguished his lien by attachment, may be unimportant to the decision of the case. But this was one of the questions seriously argued by the counsel and decided by the court; and I will present my views of it. In general, the taking of a higher security is an ex-tinguishment of a lower one. The lien of a judgment and fi. fa. is general, and includes all the debtor’s estate; whilst the lien of the attachment is only on the specific property levied on. It sometimes happens, as was the case here, that the specific lien is more valuable to the creditor than the general lien, and hence the propriety of that rule of law which says that the higher security must be accepted as satisfaction, in order to operate as an extinguishment. If not accepted as satisfaction, then it is merely additional or cumulative security 'for the same debt; 1 Mason, 505. In the absence of proof to the contrary, the authorities seem to favor the notion, that the law will imply the higher security was in satisfaction of the inferior; but in the case of Twopenny & Boys vs. Young, 10 Eng. C. L. R. 54, it was held that the higher was only additional security, where the intention appeared from the recitals. But it is supposed that this legal presumption cannot be rebutted by parol evidence. That may be so, where the fact, that both securities were for the same debt, appeared from the higher security, or by comparing the two together; but if the fact is proved by parol, there can be no objection that the terms on which the higher security was received, are also proved by parol. In. this case, the records do not identify them as being for the same debt; the declaration in the confession case is on an account stated for $1000, without interest; the attachment is on several notes, which, with interest, exceed that sum. The parol evidence, which identifies them as for the same debt, also shews the terms on which the confession, which Hust tendered to Gardner for his debt, was accepted by him. In 1 Mason, 505, it is said: “ whether the higher security extinguishes the lower, is always a question of intention.” It seems to me, therefore, that there is nothing in this ground.
*609 . There is nothing in any of the grounds made on the • part of the sheriff, Boulware, which requires any comment. His levy in November was clearly tortious, and he cannot charge for keeping property of which he has thus acquired possession. I suppose he levied on Hust’s property the new batch of attachments, which were issued after the service of the first was set aside. These, as against Hust, were discontinued, and he must look to the plaintiffs for his fees, if they are liable. Certainly, Hust’s property is not liable for fees in cases not prosecuted to judgment.
The judgment of the circuit court is therefore affirmed, and the appeal dismissed.
BjchaRdson, O’Neall and FRost, JJ. concurred.